PETITION FOR WRIT OF HABEAS CORPUS: 28 USC §2254 (Rev. 10/99)

# ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE _Eastern_ DISTRICT OF TEXAS

_Tyler_ Division

## PETITION FOR A WRIT OF HABEAS CORPUS BY A
## PERSON IN STATE CUSTODY

_Landis Charles Barrow_
**PETITIONER**
(Full name of Petitioner)

_Barry B. Telford Unit_
CURRENT PLACE OF CONFINEMENT

_907416_
PRISONER ID NUMBER

VS.

_Janie Cockrell_
**RESPONDENT**
(Name of TDCJ Director, Warden, Jailor, or
authorized person having custody of petitioner)

CASE NUMBER
(Supplied by the Clerk of the District Court)

---

## INSTRUCTIONS - READ CAREFULLY

1. The petition must be legibly handwritten or typewritten, and signed by the petitioner, under penalty of perjury. Any false statement of an important fact may lead to prosecution for perjury. Answer all questions in the proper space on the form.

2. Additional pages are not allowed except in answer to questions 11 and 20. Do not cite legal authorities. Any additional arguments or facts you want to present must be in a separate memorandum.

3. When the Clerk of Court receives the $5.00 filing fee, the Clerk will file your petition if it is in proper order.

4. If you do not have the necessary filing fee, you may ask permission to proceed _in forma pauperis_. To proceed _in forma pauperis_, (1) you must sign the declaration provided with this petition to show that you cannot prepay the fees and costs, and (2) if you are confined in TDCJ-ID, you must send in a certified _In Forma Pauperis_ Data Sheet from the institution in which you are confined. If you are in an institution other than TDCJ-ID, you must send in a certificate completed by an authorized officer at your institution certifying the amount of money you have on deposit at that institution. If you have access or have had access to enough funds to pay the filing fee, then you must pay the filing fee.

5.      Only judgments entered by one court may be challenged in a single petition. If you want to challenge judgments entered by different courts, either in the same state or in different states, you must file separate petitions as to each court.

6.      Include all your grounds for relief and all the facts that support each ground for relief in this petition.

7.      When you have finished filling out the petition, mail the original and two copies to the Clerk of the United States District Court for the federal district within which the State court was held which convicted and sentenced you, or to the federal district in which you are in custody.  A "VENUE LIST," which lists U.S. District Courts in Texas, their divisions, and the addresses for the clerk's office for each division, is posted in your unit law library.  You may use this list to decide where to mail your petition.

8.      Petitions that do not meet these instructions may be returned to you.

---

## PETITION

**What are you challenging?**  (Check <u>only</u> one)

☑  A judgment of conviction or sentence,          (Answer Questions 1-4, 5-12 & 20-23)
    probation or deferred-adjudication probation
☐  A parole revocation proceeding.          (Answer Questions 1-4, 13-14, & 20-23)
☐  A disciplinary proceeding.          (Answer Questions 1-4, 15-19 & 20-23)

**All petitioners must answer questions 1-4:**

1.      Name and location of the court (district and county) which entered the conviction and sentence that you are presently serving or that is under attack:
*320th Judicial District of Potter County, Texas*

2.      Date of judgment of conviction: *January 13, 2000*

3.      Length of sentence: *20 years*

4.      Nature of offense and docket number (if known): *Aggravated Robbery ;*
*Cause No. 37,055-D*

**Judgment of Conviction or Sentence, Probation or Deferred-Adjudication Probation:**

5.      What was your plea? (Check one)

☐  Not Guilty          ☑  Guilty          ☐  Nolo contendere

6.      Kind of trial: (Check one)          ☐  Jury          ☑  Judge Only

- 2 -

CONTINUED ON NEXT PAGE

7.  Did you testify at the trial?   ☐   Yes        ☑   No

8.  Did you appeal the judgment of conviction?   ☑   Yes   ☐   No

9.  If you did appeal, in what appellate court did you file your direct appeal?

*7th Court of Appeals* _____ Cause Number (if known) *07-00-0039-CR*

What was the result of your direct appeal (affirmed, modified or reversed): *affirmed*

What was the date of that decision? *August 18, 2000* _____

If you filed a petition for discretionary review after the decision of the court of appeals, answer the following:

Result: *N/A* _____

Date of result: *N/A* _____ Cause Number (if known): *N/A* _____

If you filed a petition for *writ of certiorari* with the United States Supreme Court, answer the following:

Result: *N/A* _____

Date of result: *N/A* _____

10. Other than a direct appeal, have you filed any petitions, applications or motions from this judgment in any court, state or federal? This includes any state application for writ of habeas corpus that you may have filed.

☑   Yes        ☐   No

11. If your answer to 10 is "Yes," give the following information:

Name of court: *320th Judicial District of Potter County, Texas*

Nature of proceeding: *Art. 11.07 Application*

Cause number (if known): *W-32,055-01-0*

Date (month, day and year) you <u>filed</u> the petition, application or motion as shown by a file-stamped date from the particular court.

*August 1, 2001*

Grounds raised: *1) Indictment Fundamentally Defective Rendering Twenty Year Sentence Void. (cont'd on page 10)*

CONTINUED ON NEXT PAGE

Date of final decision: _October 3, 2001_

Name of court that issued the final decision: _Court of Criminal Appeals_

As to any _second_ petition, application or motion, give the same information:

Name of court: _N/A_

Nature of proceeding: _N/A_

Date (month, day and year) you <u>filed</u> the petition, application or motion as shown by a file-stamped date from the particular court.
_N/A_

Grounds raised: _N/A_

Date of final decision: _N/A_

Name of court that issued the final decision: _N/A_

_If you have filed more than two petitions, applications, or motions, please attach an additional sheet of paper and give the same information about each petition, application, or motion._

12. Do you have any future sentence to serve after you finish serving the sentence you are attacking in this petition?
      ☐    Yes      ☑    No

    (a) If your answer is "yes," give the name and location of the court that imposed the sentence to be served in the future:
      _N/A_

    (b) Give the date and length of the sentence to be served in the future: _N/A_

    (c) Have you filed, or do you intend to file, any petition attacking the judgment for the sentence you must serve in the future?

      ☐    Yes      ☑    No

CONTINUED ON NEXT PAGE

**Parole Revocation:**

13.     Date and location of your parole revocation: _____

14.     Have you filed any petitions, applications, or motions in any state or federal court challenging your parole revocation?

       ☐    Yes            ☐    No

       If your answer is "yes," complete Question 11 above regarding your parole revocation.

**Disciplinary Proceedings:**

15.     For your original conviction, was there a finding that you used or exhibited a deadly weapon?        ☐ Yes    ☐ No

16.     Are you eligible for mandatory supervised release?      ☐ Yes    ☐ No

17.     Name and location of prison or TDCJ Unit that found you guilty of the disciplinary violation:

       _____

       Disciplinary case number: _____

18.     Date you were found guilty of the disciplinary violation: _____

       Did you lose previously earned good-time credits?      ☐ Yes    ☐ No

       Identify all punishment imposed, including the length of any punishment if applicable, any changes in custody status, and the number of earned good-time credits lost: _____

       _____

19.     Did you appeal the finding of guilty through the prison or TDCJ grievance procedure?

       ☐    Yes            ☐    No

       If your answer to Question 19 is "yes," answer the following:

       Step 1 Result: _____

              _____

              Date of Result: _____

       Step 2 Result: _____

              _____

            CONTINUED ON NEXT PAGE

Date of Result: _____

## All applicants must answer the remaining questions:

20.     State <u>clearly</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting them.

**CAUTION:**
<u>Exhaustion of State Remedies:</u> You must ordinarily present your arguments to the highest state court as to each ground before you can proceed in federal court.
<u>Subsequent Petitions:</u> If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

Following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement is a separate ground for possible relief. You may raise any grounds, even if not listed below, if you have exhausted your state court remedies. However, <u>you should raise in this petition all available grounds</u> (relating to this conviction) on which you base your belief that you are being held unlawfully.

<u>DO NOT JUST CHECK ONE OR MORE OF THE LISTED GROUNDS.</u> Instead, you must also STATE the SUPPORTING FACTS for ANY ground you rely upon as the basis for your petition.

(a)     Conviction obtained by a plea of guilty which was unlawfully induced, or not made voluntarily, or made without an understanding of the nature of the charge and the consequences of the plea.

(b)     Conviction obtained by the use of a coerced confession.

(c)     Conviction obtained by the use of evidence gained from an unconstitutional search and seizure.

(d)     Conviction obtained by the use of evidence obtained from an unlawful arrest.

(e)     Conviction obtained by a violation of the privilege against self-incrimination.

(f)     Conviction obtained by the prosecution's failure to tell the defendant about evidence favorable to the defendant.

(g)     Conviction obtained by the action of a grand or petit jury which was unconstitutionally selected and impaneled.

(h)     Conviction obtained by a violation of the protection against double jeopardy.

(i)     Denial of effective assistance of counsel.

(j)     Denial of the right to appeal.

(k)     Violation of my right to due process in a disciplinary action taken by prison officials.

CONTINUED ON NEXT PAGE

A.   **GROUND ONE:** *Indictment Fundamentally Defective Rendering Twenty Year Aggravated Sentence Void.*

Supporting FACTS (tell your story briefly without citing cases or law):

*A). Indictment Fails To Allege Ownership Of Property: Applicant's indictment does not comply with the requisites of the statute for aggravated robbery, all indictment alleges is a "Terroristic Threat" against Victor Guy Smith. Applicant's indictment fails to allege (cont'd on page 10)*

(cont'd on page 10)

B.   **GROUND TWO:** *Guilty Plea Was Involuntary And Unknowingly Entered.*

Supporting FACTS (tell your story briefly without citing cases or law):

*A). Trial Court Accepted Applicant's Co-defendant's, Twin Brother's Plea Three Days Prior To Applicant's Plea For Identical Conduct Without Applying The Law Of Parties To His Offense: On December 5, 1996, Applicant and his twin brother were indicted for Aggravated Robbery that occurred on November 29, 1996, (cont'd on page 12)*

(cont'd on page 12)

C.   **GROUND THREE:** *Trial Court Erred In Deadly Weapon Finding.*

Supporting FACTS (tell your story briefly without citing cases or law):

*On September 11, 1997, Applicant appeared before the trial court and entered a plea of guilty pursuant to a plea-bargain for ten years deferred probation upon an indictment for Aggravated Robbery (Exhibit A). Applicant's probation was subsequently revoked and he was sentenced to twenty years (cont'd on page 17)*

(cont'd on page 17)

CONTINUED ON NEXT PAGE

D.      **GROUND FOUR:** *Denial Of Effective Assistance Of Counsel*
*Prior To And At Guilty Plea Hearing.*

Supporting FACTS (tell your story briefly without citing cases or law):

*Applicant is currently serving a 20 year sentence because of his*
*ineffective counselor whom represented him from July 8, 1997 to*
*September 11, 1997, whom failed to do any form of investigation into*
*his charges on which two other individuals committed, but due to*
*irreconcilable circumstances he was forced (cont'd on page 20)*

21.    Have you previously filed a federal habeas petition attacking the same conviction, parole
revocation, or disciplinary proceeding that you are attacking in this petition?

☐      Yes              ☑      No

If your answer is "yes," give the date on which each petition was filed, the federal court in
which it was filed, and whether the petition was (a) dismissed without prejudice or (b)
denied.

*N/A*

22.    Are any of the grounds listed in paragraph 20 above presented for the first time in this
petition?

☐      Yes              ☑      No

If your answer is "yes," state briefly what grounds are presented for the first time and give
your reasons for not presenting them to any other court, either state or federal.

*N/A*

- 8 -                                     CONTINUED ON NEXT PAGE

23.     Do you have any habeas corpus proceedings or appeals now pending in any court, either state or federal, relating to the judgment or proceeding under attack?

☐     Yes               ☑     No

If "yes," identify each type of proceeding that is pending (i.e., direct appeal, art. 11.07 application, or federal habeas petition), the court in which each proceeding is pending, and the date each proceeding was filed.

*n/a*

Wherefore, petitioner prays that the Court grant him the relief to which he may be entitled.

*Landis Charles Barrow*
Signature of Attorney (if any)

*Pro Se*

*P.O. Box 9200*

*New Boston, Tx. 75570*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on *November 16, 2001*           (month, date, year).

Executed on *November 16, 2001*           (date).

*Landis Charles Barrow*
Signature of Petitioner (required)

Petitioner's current address: *P.O. Box 9200, New Boston, Tx. 75570,*

*Barry B. Telford Unit*

- 9 -

(Cont'd from page three)

_11. Grounds raised:_ 2) Guilty Plea Was Involuntary And Unknowingly Entered. 3) Trial Court Erred In Deadly Weapon Finding. 4) Denial Of Effective Assistance Of Counsel At And Prior To Guilty Plea. 5) State Used Perjured Testimony From Tom Coleman and Officer Kenny Albright To Unlawfully Revoke Applicant's Probation. 6) There Was No Evidence To Obtain A Revocation Of Applicant's Probation. 7) Counsel Was Ineffective At Applicant's Revocation Hearing Resulting In An Unlawful Conviction.

(Cont'd from page 7)

_20. GROUND ONE cont'd:_ the most essential element of aggravated robbery, and that is the name of whom was allegedly robbed. Indictment states that Applicant, "did then and there, while in the course of committing theft of property, to-wit: good and lawful U.S. Currency...," but it fails to allege the necessary element of the manner of ownership of said property. Indictment only alleges that Applicant, "intentionally and knowingly threaten and place Victor Guy Smith in fear of imminent bodily injury and death,...," but never alleges he was robbed or attempted to be robbed. Applicant to this day, does not know who he stands convicted of allegedly robbing and when he filed his Art. 11.07 Application, the State affirmed conviction because it alleged that the omission of the owner's name doesn't render indictment void. This can't be true because if John Doe was the complainant and he died prior to trial the State could get anyone to testify against Applicant at trial in his place because indictment fails to allege manner of ownership of said property. If anyone has a right to the property as the State alleges why can't Applicant be the alleged property owner since indictment fails to allege manner of ownership of property. _Refer to Exhibit A._

_B). Indictment Fails To Allege Property Was Taken Without The Owner's Effective Consent:_

Applicant's indictment is fundamentally defective because it omitted the necessary phrase, "without the owner's effective consent," when alleging "while in the course of committing theft of property." The indictment charges Applicant with Aggravated Robbery which fails to allege the required elements of underlying robbery which is theft. The indictment fails to allege that the property was unlawfully appropriated from any specific individual. All indictment alleges that Applicant, "did then and there, while in the course of committing theft of property, to-wit: good and lawful U.S. Currency, and with intent to obtain and maintain control of said property," but it fails to allege the property owner's name and that the property was taken "<u>without the owner's effective consent.</u>" Applicant's indictment for aggravated robbery failed to allege the above-mentioned required elements of any robbery which renders his indictment and 30 year sentence void and nullified. Applicant's indictment failed to allege property was unlawfully appropriated with intent to deprive any specific owner of any property, therefore, if any property was taken, on which indictment doesn't specify any amount just stating "U.S. Currency," "<u>it was appropriated with the owner's effective consent.</u>" Furthermore, since indictment fails to allege these elements it would render Applicant's conviction void. <u>Refer to Exhibit A.</u>

<u>C). Indictment Failed To Give Trial Court Jurisdiction :</u>

Indictment failed to give the trial court jurisdiction because it failed to charge Applicant with the commission of an "Aggravated Robbery". Applicant's indictment is fundamentally defective in that it states the offense, but fails to allege the necessary elements of the robbery statute, to-wit: manner of ownership of property, amount of property allegedly taken in robbery, and that the appropriation of that property was without the owner's effective consent. Indictment does not comply with the requisites of the aggravated robbery statute, all it alleges on its face is a simple " Terroristic Threat" against Victor Guy Smith and not a robbery against Victor Guy Smith. Indictment only alleges the offense of Terroristic Threat, but fails to allege the required elements necessary to obtain a conviction for Aggravated

Robbery. Applicant alleged these very grounds but the State failed to respond to the ground's subheadings and merely alleged that the omission of the owner's name did not render indictment void, and the Court of Criminal Appeals dismissed the Application without written order after Applicant filed three objections to the State's falsified and misleading answer to Application. Applicant alleged true facts supported by exhibits and the Court of Criminal Appeals did not give Applicant the opportunity to be heard, but instead dismissed the Application without written order sixteen days after recieving the Application, therefore, forcing Applicant to file this Petition in Federal Court.

(Cont'd from page 7)

   20. GROUND TWO cont'd: along with three other individuals, whom two of the three turned State's evidence against Applicant and his twin brother in order to have their charges dismissed. Anyways refer to Exhibit A and B. One can easily see that the indictments are identical in wording, line for line, except the first letter of Applicant's and his twin brother's first name. In the contents of these two indictments there is no application paragraph or phrase that addresses the law of parties. On September 8, 1997, without Applicant's knowledge, his twin brother pled guilty to the indictment (Exhibit B) pursuant to a 10 year probation plea bargain. Applicant said that to say this. The Court had to find Applicant's Co-defendant, twin brother, guilt beyond a reasonable doubt to each and every element of the indictment in order to accept his plea, in which there was no application paragraph addressing the law of parties. See Exhibit B. Applicant's twin brother pled guilty as the primary actor, and upon this plea Applicant's counsel, court-appointed, called Applicant at the county jail and informed him that his twin brother was being released on probation for a period of ten years. Counsel also informed Applicant that the prosecutor was willing to give him the same ten years probation if Applicant pled guilty. After approximately six months of being incorcerated while innocent Applicant was taken to the Courthouse where he pled guilty under duress to the exact same elements of the

same robbery that his identical twin brother pled guilty to, without being charged or addressed under the law of parties. Applicant did not plead guilty as a party to the offense, but was charged and convicted as the primary actor of committing same elements twin brother pled guilty to have committed three days prior. On September 8, 1997, Applicant's twin brother pled guilty to committing all of the elements of the same aggravated robbery in which Applicant pled guilty to committing three days later. On September 8, 1997, the trial court found that Applicant's twin brother was guilty to committing all of the elements alleged in indictment beyond a reasonable doubt and he stated that Applicant was not involved, on which Applicant presented that affidavit to the Court of Criminal Appeals. Then three days later the same trial court found that Applicant was guilty of committing all of the same elements that his twin brother pled guilty to, without either being charged or addressed under the law of parties.

The trial court erred in accepting Applicant's plea because he didn't plea under the law of parties and the prosecutor failed to amend Applicant's indictment to fit his plea, but egregiously allowed Applicant to plead guilty as the primary actor after another man had already pleaded guilty as the primary and only actor to the crime. Furthermore, if Applicant's twin brother was guilty of committing all of the elements of the offense beyond a reasonable doubt, and specifies that Applicant was not involved, there would be no elements for Applicant to plead guilty to. Therefore, since Applicant pled guilty to the same elements his twin brother pled guilty of committing his plea was involuntary and not knowing, and the only reason Applicant pled guilty to the fundamentally defective indictment is because he was tired of being incarcerated against his will and the State promised him his freedom - partially, probation for ten years, upon his guilty plea which was better than doing one day in physical custody while innocent. **See Exhibit A and B.** Since Applicant's twin brother pled guilty and was indicted first the State should of elected to proceed to amend Applicant's indictment to fit as a party to his twin brother's offense, but it failed to do so rendering Applicant's plea involuntary and unknowingly. Applicant's plea was involuntarily entered because he pled guilty under

duress after promised partial freedom, ten years probation, to committing the exact elements his twin brother was found guilty of committing beyond a reasonable doubt, without the law of parties being applied by the Court.

### B). Prosecutor And Court-Appointed Counsel Coerced Applicant To Plead Guilty In Order To Recieve Ten Years Probation.

On April 2, 1997, Applicant was arrested for the third time for the Aggravated Robbery in which he took no part in, just being in the vicinity of the crime scene. On July 8, 1997, the trial court appointed James Clark to represent him, on which counsel only visited him once and called once to tell Applicant of the State's plea bargain. Counsel coerced Applicant to believe that he could be convicted of the robbery because he was at the crime scene and failed to disclose it to the authorities, and if elected to proceed with jury trial could possibly be sentenced to life in prison eventhough Applicant was not directly involved in the robbery. Counsel began telling Applicant that he was going to the penitentiary at the age of 19 and that he would be locked up with murderers and other violent criminals if he didn't take the plea bargain for ten years probation. Applicant began to realize the harsh reality of his situation by either choosing partial freedom on ten years probation or no freedom if convicted and sentenced to prison. Counsel then began to tell Applicant that his twin brother was released and on a bus to Houston, Texas to be with their mother because he accepted the probation. Counsel then began telling Applicant that the robbery wouldn't be on his record as a conviction and that he could have him released in 3days. Applicant didn't want to take the chances of going to prison just because he was at the vicinity of the crime, not knowing he couldn't be convicted just on that basis. This conversation was recorded at the Potter County Detention Center and it will prove Counsel's coercive tactics. Applicant went to the Courthouse on September 11, 1997, to plead guilty but he had second thoughts and changed his mind, and after several conversations with counsel, and counsel with prosecutor, they both became very frustrated with Applicant. To make a long story short, the prosecutor told Applicant he could either take the plea bargain for ten years

probation or he was going to sentence him to ten years T.D.C. where he would have to do eight and a half years before being eligible for parole because of some 85% law he was under. Applicant continued to plead his innocence but the prosecutor coerced him to believe that the burden of going to prison for ten years outweighed the burden of trying to live down ten years probation, so Applicant made the choice any American would make under the same irreconcilable situation, eventhough innocent, in order to recieve some liberty and partial freedom on probation instead of taking chances on going to prison to lose all freedom if convicted because he was at the crime scene and failed to disclose it to the proper authorities.

### C). Trial Court Failed To Do A Proper Inquiry Into Applicant's Guilt Before Accepting His Guilty Plea.

Applicant went before the 336th Judicial District Court before the Honorable Judge Don Emerson on September 11, 1997, where he entered his guilty plea pursuant to a plea-bargain agreement for ten years probation (Reporter's Record, Guilty Plea, pg. 2, incorporated herein and after as R.R.G.P.). Applicant had very little time to consult with his court-appointed counsel, James Clark, because counsel only visited Applicant once at the County Jail for a few minutes to inform him that he was assigned to the case and to have Applicant sign some legal documents, and he called Applicant once to inform him about the State's plea-bargain offer. Therefore, Applicant only consulted with his lawyer for a short length of time to go over the indictment on which he didn't remember recieving. Counsel informed Applicant and the Court that there was no need to go over the indictment because it would just delay the proceedings (R.R.G.P., pg. 2, line 9-15). Applicant wasn't aware of what he was doing, all he knew was that he had been falsely imprisoned for approximately six months and he was willing to do whatever it took to be released. Subsequently, counsel taught Applicant how to plead guilty before the trial court so the judge would accept the plea. The judge then told Applicant what he was indicted for and then asked him if he had sufficient opportunity to talk with his lawyer about all the allegations contained in the indictment

(R.R.G.P., pg. 3, line 12-16). The Court then asked Applicant how did he plead and he stated guilty (R.R.G.P., pg. 3, line 17-18). The judge then told Applicant if he persisted in pleading guilty the court would still recieve testimony if he was, in fact, guilty (R.R.G.P., pg. 3, line 19-21), but the court never recieved testimony of any sort and never inquired into the voluntariness of the plea. Applicant felt he was going to get a chance to finally tell the judge his version of the facts, but that chance never came around even to this day.

Applicant was also asked by the judge had anyone promised him probation, a pardon or a speedy parole and Applicant was coerced to say no by counsel (R.R.G.P., pg. 4, line 9-10). Applicant was told to lie to the Court by counsel so the Court would not realize that he was promised probation upon his plea, which is why he was at the Courthouse to plead guilty for because counsel had already prearranged the 10 year plea-bargain agreement with the prosecutor (R.R.G.P., pg. 5, line 9), which was followed by the trial judge (R.R.G.P., pg. 8, line 25 to pg. 9, line 1). The judge then asked Applicant if he gave him a judicial confession in which Applicant admitted to all the allegations contained in the indictment and he agreed (R.R.G.P., pg. 5, line 12-17). This same judicial confession is contained in the Clerk's Record on page 14. Again, Applicant thought he was going to be able to explain that he was only at the scene of the crime and not directly involved in the alleged robbery, but the Court never gave him the opportunity. As a matter of fact, the Court got sidetracked by talking with Applicant about his prior criminal history (R.R.G.P., pg. 5, line 18 to pg. 6, line 14). Then the Court started asking Applicant about his current job status (R.R.G.P., pg. 6, line 15 to pg. 8, line 24). During the entire guilty plea proceeding the Court, prosecutor, nor counsel never once asked Applicant a single question or heard any testimony pertaining to the robbery he was pleading guilty to. The Court even told Applicant that it would still recieve testimony concerning the accuracy of his plea to see if he was, in fact, guilty (R.R.G.P., pg. 3, line 19-21), but the trial court never inquired into Applicant's guilt or the voluntariness of his plea. Even on the pre-arranged judicial confession Applicant was coerced to sign it even stated that there would still be some testimony given (Clerk's

Record, pg. 14). The Court never determined if Applicant was coerced, frightened, or even paid to plead guilty. The trial court failed to recieve testimony from Applicant concerning his role in the robbery to see if it corroborated with the evidence the prosecutor was presenting in order to determine if Applicant was guilty to what he was pleading guilty to. Applicant was not involved in the robbery and the only reason he pled guilty was due to his long length of incarceration against his will, the thought of being convicted because he was at the scene of the crime and failed to disclose it and because the State promised him ten years probation upon his plea of guilty where he could be released the same day. The trial court erred in accepting Applicant's plea because the Court asked him if he was promised probation and he stated no (R.R.C.P., pg. 4, line 9 and Clerk's Record, pg. 14), but the record reflects that Applicant was promised ten years deferred probation upon a plea-bargain agreement with the State on which the trial judge followed (R.R.C.P., pg. 8, line 25 to pg. 9, line 1), therefore, rendering his plea not knowingly and voluntarily entered. Applicant didn't care what it took to get free and when the prosecutor promised him probation he took it because he was frustrated with being false imprisoned without a bond. The trial court alleges that it heard the evidence and it substantiated Applicant's guilt (Clerk's Record, pg. 42 and 52), but Applicant's testimony and the Reporter's Record proves that there was no such inquiry and that the trial court never heard any evidence concerning Applicant's guilt or role in the robbery he was pleading guilty to. Applicant addressed this ground in his Art. 11.07 Application, and the Court failed to address the ground on which Applicant objected to in three motions, but the Court of Criminal Appeals egregiously dismissed the Application with out written order. Therefore, preventing Applicant's ground of error from being addressed.

(Cont'd from page 7)

**20. GROUND THREE cont'd :** confinement in TDCJ-ID and the trial court erred in entering a Deadly Weapon finding in its judgement. First of all, Applicant's twin brother had previously pled guilty to using

and exhibiting the deadly weapon on which the trial court found his guilt beyond a reasonable doubt. Applicant's twin brother pled guilty to the use and exhibition of the deadly weapon in the robbery he was indicted with Applicant to have committed, which means that the trial court erred in entering the same use and exhibition of the deadly weapon in Applicant's case without first determining if Applicant himself used and exhibited the deadly weapon, to-wit: unloaded B.B. Pistol. The trial court found that Applicant's twin brother committed each and every element in the robbery (Exhibit B), including the use and exhibition of the deadly weapon. The trial court heard the evidence and believed that Applicant's twin brother committed each and every element in the robbery beyond a reasonable doubt. Applicant and his twin brother were indicted for committing the same elements in the same aggravated robbery without the law of parties being applied to their case, on which they were charged as the primary actor of committing each element. See Exhibit A and B. Applicant's twin brother had already pled and found guilty of committing the robbery as the primary actor on September 8, 1997, & the trial court erred in entering the deadly weapon finding and the only way Applicant feels he should of been convicted for Aggravated Robbery is if the trial court found evidence that he himself, used And exhibited the deadly weapon on which the court failed to do so. The use of a deadly weapon finding was only proper if Applicant used or exhibited the deadly weapon and not his twin brother, but since his twin brother was found and pled guilty to this element of using and exhibiting the deadly weapon, to-wit: an unloaded B.B. Pistol, wouldn't be improper for the trial court to add the affirmative finding of the use of the B.B. Pistol when Applicant was never found to use or exhibit it himself?

   Second, the trial judge is authorized at punishment stage to make an affirmative finding as to the use or exhibition of a deadly weapon because he was the trier of fact and supposedly have heard evidence on such issue right? If so, the trial court erred because it never heard any evidence as required by law, except for the pre-typed judicial confession Applicant didn't write but signed in order to plead guilty to recieve the probation (R.R.G.P., pg. 5, line 13-17; Clerk's Record, pg. 14). In the

contrary, Applicant's twin brother signed the exact pre-typed judicial confession in order to recieve the plea-bargain for probation and the law of parties were not applied to either case. _The trial court alleges they heard evidence to substantiate Applicant's guilt (Clerk's Record, pg. 42 and 52), but the Reporter's Record is absent of this fact, nor does it show whether Applicant was charged and convicted for committing the robbery individually using a deadly weapon, or whether he was a party to the use of a deadly weapon, or even if the said deadly weapon, to-wit: unloaded B.B. Pistol, was capable of causing death or serious bodily injury._ The trial court asked Applicant what was his plea and cleary stated that it would still recieve testimony to see if Applicant was, in fact, guilty (R.R. G.P., pg. 3, line 17-21), but the trial court never heard any evidence or testimony concerning the role Applicant played in the robbery as it alleges (Clerk's Record, pg. 42 and 52). The Court egregiously accepted Applicant's plea without hearing any evidence or testimony (R.R. G.P., pg. 8, line 25 to pg. 9, line 1), and after Applicant's probation was subsequently revoked the State never presented any evidence as to Applicant's punishment as it alleges falsely (Clerk's Record, pg. 42). This averment is supported by the record (Reporter's Record Revocation Hearing, pg. 57, line 17 to pg. 58, line 12; Clerk's Record, pg. 52), as the reviewing court can observe by the record that the trial court had Applicant mistaken for his twin brother, Mardis Barrow.

The record is absent of any proof whatsoever as to whether the said deadly weapon, to-wit: an unloaded B.B. Pistol, was designed, made or adopted for the purpose of inflicting death or serious bodily injury, or that there was anything in the manner of its use or intended use was capable of causing death or serious bodily injury. Also, the trial court's verdict does not reflect whether Applicant was convicted for committing the robbery by individually using a deadly weapon, or whether he was convicted as a party to the use of a deadly weapon. Applicant did not plea guilty under the law of parties. Applicant and his twin brother plea guilty to have committed the exact same elements in the same robbery indictment with the law of parties being absent in both pleas. The trial court accepted Applicant's twin brother's guilty plea on September 8, 1997, on which it found that he

committed all of the elements of the Aggravated Robbery beyond a reasonable doubt as the primary actor. Therefore, wouldn't the deadly weapon finding be improper in Applicant's case because the trier of fact considered and believed that Applicant's twin brother used and exhibited the deadly weapon and the record, Reporter's Record, is absent of any proof or evidence as to whether Applicant used or exhibited the B.B. Pistol himself? Applicant feels the trial court erred in entering an affirmative finding as to the use and exhibition of a deadly weapon, on which he addressed this averment in his Art. 11.07 Application, but the State and trial court evaded from answering this ground, and the Court of Criminal Appeals dismissed the application without written order leaving Applicant's ground of error unaddressed.

( Cont'd from page 8 )

   **20. GROUND FOUR cont'd :** to take a plea-bargain to prevent from being incarcerated for ten years or possibly the rest of his life. Applicant's court-appointed attorney was paid on $400.00 to represent Applicant (Clerk's Record, pg. 21 ). Applicant's case was very complicated because he was an identical twin on which him and his twin brother were charged for the robbery two other individuals committed because they were at the scene of the crime, whom the actual perpetrator's charges were ultimately dismissed because they wrote statements against Applicant and his twin brother. These statements were meaningless because they were wrote through coercion from police, plus there was two eyewitnesses whom could of corroborated Applicant's innocence, namely, store clerk and Joashua Devon Barrow ( doesn't have copy, but is incorporated therein the Art. 11.07 Application as Exhibit 4 ). Due to the trial court only paying Applicant's court-appointed counsel, James Clark, only $400.00 for retainer fees made it impractical for counsel to render effective assistance of counsel, on which counsel showed no effort to effectively represent Applicant but to only coerce Applicant to plead guilty to prevent a jury trial that was time consuming. Counsel only visited Applicant once at the Potter County Detention Center for a short time because he needed Applicant to sign some legal documents,

on which counsel had to cut the visit short because he had other clients whom he needed to consult with at the jail, but during this short visit counsel _never_ once inquired into the guilt or innocence of the charges Applicant stood accused of committing. Counsel only visited with Applicant for ten minutes at the most on which counsel told him that he would reschedule the visit at a later date to discuss the facts, but that day still haven't come around. This can be verified through the Attorney Visitation records at the Potter County Detention Center.

Counsel never once came and interviewed material witnesses whom could of corroborated Applicant's innocence ( doesn't have copy, but is incorporated therein the Art. 11.07 Application as **Exhibit 4, 5, 6 and 7**). Counsel never even bothered to determine if Applicant was guilty or innocent and to this day counsel is absent of that knowledge because he failed to fulfill his legal duty. Counsel only wanted to plead Applicant guilty to accept a plea-bargain on which he never filed any pre-trial or discovery motions whatsoever on Applicant's behalf during the entire time of his representation, namely, motion for prosecutor to bring forth all exculpatory evidence, motion to recieve additional funds in order to hire an investigator to investigate case and witnesses, motion for the retainment of an "Expert," to determine if the BB Pistol was a deadly weapon capable of causing death and serious bodily injury, or a motion to suppress evidence the falsified statements, and motion to quash the fundamentally defective indictment.

Counsel never interviewed the victim to see if he sought any medical attention or whether he even needed to. Counsel never even bothered to seek information from the victim to see if he was planning on testifying at trial, especially since the victim never wrote a victim impact statement against Applicant. Counsel never once during his entire time of representing Applicant prepare himself for trial because his only interest was to plead Applicant out because he felt he was underpaid by the court. Counsel never interviewed Applicant's codefendant, Applicant's twin brother, Mandis Charles Barrow to determine if Applicant was the primary actor, accomplice, a party to the offense, or just merely at the scene of the crime, or whether Applicant was innocent, or to see what role Applicant played in the robbery if any. Counsel

ever even bothered to determine what role Applicant played in the robbery before he pled him guilty and if he would of interviewed co-defendant and the eyewitness Joashua Devon Barrow he would of realized that Applicant was innocent and didn't do as the State alleged he did.

Applicant's trial date was approaching very rapidly and his counsel never even interviewed Applicant, himself, in order to his version of the robbery. The only information counsel sought and had in its possession pertaining to the robbery was what the prosecutor presented him, on which made the case one-sided because counsel failed to do an independant investigation of the facts. In other words, counsel only had the prosecutor's version of the facts and not his owns, Applicant's, codefendant's, or even potential witnesses, on which could of rebutted the State's allegations. (See Exhibit 4, 5, 6 and 7 that is incorporated in the Art. 11.07 Application due to the inability to obtain copies.) For instance, the B.B. Pistol that was considered to be a deadly weapon wasn't ever in Applicant's possession, it was not loaded or capable of firing in order to possibly cause death or serious bodily injury as alleged in the indictment and Applicant didn't knew of its whereabouts. (See Exhibit 3 that is incorporated in the Art. 11.07 Application due to the inability to obtain copies for this petition).

Applicant's finger prints were not on the B.B. Pistol which meant that the element that he used and exhibited the deadly weapon was a false allegation, rendering indictment fundamentally defective. This averment can be supported by the Amarillo Police Report #15,166-C and the potential witnesses, Anita Barrow, Joashua Devon Barrow and Mandis Barrow.

Due to counsel rendering ineffective assistance so close to Applicant's trial date Applicant's mother, Anita Barrow, retained a local attorney by the name of James Durham to represent Applicant on which she paid him approximately $5000.00 (See Exhibit 3 that is incorporated in the Art. 11.07 Application due to the inability to attach copies). That alone compared to the $400.00 the court paid James Clark as retainer fees verifies a big reason why counsel showed no interest in representing Applicant effectively. Applicant immediately fired him, court-appointed counsel, and he became furious for some reason, but due to Applicant's laymanship he failed to sign any withdrawl forms to remove counsel from attorney of record.

Applicant's newly retained counsel, James Durham, also represented Applicant's twin brother whom on September 8, 1997, pled him guilty to recieve ten years probation. Before James Durham could consult with Applicant he recieved a phone call at the Potter County Detention Center from his fired court-appointed attorney, James Clark, informing Applicant that his twin brother was released on probation pursuant to a guilty plea after being incarcerated approximately six months. Applicant's court-appointed counsel, James Clark, began telling Applicant that he had a discussion with the prosecutor and they had arranged where Applicant would recieve ten years probation upon the entry of his guilty plea. Applicant's court-appointed counsel knew of Applicant's newly retained counsel, James Durham, so Applicant told him he was leaving everything to his new counsel. Applicant's court-appointed lawyer began coercing Applicant to believe if he proceeded to trial with his new counsel, James Durham, he could recieve a life sentence at 19 years old and would have to do 85% of it before he become eligible for parole because of some legislature law Applicant fell under. Counsel continued to tell Applicant that his mother was very ill and that she needed him to take the probation in order to be released from jail to take care of her, which came to find out was a lie, but the chance of going to prison that long was too great of a risk where he could lose all of his freedom so he took the instant freedom by taking the probation.

On September 11, 1997, Applicant was transported to the Courthouse where he consulted with his lawyer about some waivers he had to sign in order to plead guilty before the court where the court would accept the plea. Still, counsel, James Clark, whom was court-appointed and verbally fired, never even bothered to ask Applicant about the facts pertaining to the robbery. Counsel failed to determine if Applicant was, in fact, guilty to the crime he was pleading to. Applicant signed the court documents but wasn't able to understand them due to his laymanship and counsel never fully explained them or the consequences of losing the Constitutional Rights he would lose if signed them because counsel was rushing through the entire hearing. Counsel made no effort to take his time to ensure that Applicant wanted to plead guilty on which Applicant wasn't sure if he really should because he

didn't commit no robbery, but was merely at the crime scene. Applicant and counsel ended up having some heated discussions and Applicant changed his mind about pleading guilty, on which counsel informed the prosecutor about the sudden change. The prosecutor then informed Applicant that he wasn't going to waste the court's time and that Applicant could plea for the probation for ten years or he (prosecutor) was going to sentence him to ten years before he left the courthouse. Applicant told his court-appointed lawyer and the prosecutor that he was innocent and then the prosecutor yelled in a vindictive voice saying that Applicant could think about the ten years probation the State was offering while he was serving his ten year sentence in prison. Counsel took Applicant back to the holding cell and coerced Applicant to believe taking the probation was a better deal. Applicant was confused and scared and counsel, even though court-appointed, failed to explain the basic elements necessary to obtain a conviction for aggravated robbery to Applicant.

Counsel never explained to Applicant the required elements the state had to prove in order to convict Applicant at a trial which was intent, that the theft had to be appropriated without the owner's effective consent to be unlawful, and that the deadly weapon, to-wit: an unloaded B.B. Pistol, had to be capable of causing death and serious bodily injury and that Applicant had to use and exhibited the deadly weapon. Counsel never went over the indictment with Applicant ~~thoroughly~~ as required and if he would have he would of realized that it was fundamentally defective (Exhibit A), but counsel coerced Applicant into lying to the judge that they had discussed the charges and elements of the indictment (R.R.G.P., pg. 3, line 12-16). Counsel was in a rush to get the hearing over with where he failed to give the trial court the opportunity to observe the elements in the robbery because counsel waived the reading of the fundamentally defective indictment to save time which had an injurious effect that resulted in the trial court accepting an involuntary plea (R.R.G.P., pg. 2, line 8 to pg. 3, line 8), on which Applicant didn't remember actually recieving the indictment. Applicant was so confused and he never knew he was pleading guilty to the use of the deadly weapon. The trial court would of never accepted Applicant's plea if counsel wouldn't of waived the

indictment and read it, or allowed the court to read it, to give the judge the opportunity to sufficiently observe the indictment.

Applicant wasn't aware of his decisions or the consequences that came from making these decisions and counsel never explained these consequences of Applicant's decision, but merely stood there while Applicant signed and pled his life away unknowingly. As a matter of fact, counsel only made four rather small statements during the entire hearing which were meaningless (R.R.G.P., pg. 3, line 8-15; pg. 6, line 14; pg. 9, line 5; and pg. 9, line 14). In all due respect, everytime counsel open his mouth it was either meaningless or caused Applicant some form of egregious harm. Due to counsel's ineffectiveness Applicant was left in the field of the "legal wilderness" all alone to try to understand what lawyers go to college to study for.

Counsel was only paid $400.00 by the court to represent Applicant which played a major roll in his deficient performance. Applicant was so confused at his hearing that the judge asked him if he knew the victim and he stated yes (R.R.G.P., pg. 9, line 6-7), but Applicant has never seen the victim and vice versa, and this can be verified by the alleged victim. Also, counsel had Applicant lie to the judge by saying that Applicant wasn't promised probation (R.R.G.P., pg. 4, line 9-11; Clerk's Record, pg. 14), but the record clearly reflects that ten years probation was the basis for the plea on which the judge egregiously accepted (R.R.G.P., pg. 8, line 25 to pg. 9, line 1). To this very day the judge, prosecutor, nor counsel has ever heard one state-ment from Applicant pertaining to the robbery he currently stands convicted of.

Applicant would of never pled guilty to the robbery and the trial judge would of never accepted Applicant's guilty plea if counsel would of equipped Applicant with the necessary facts and elements required to obtain a conviction, explained possible lesser included offenses, all possible defenses, consequences of plea, possible future sentence if probation ever revoked, investigated case and hired an investigator and expert witness, interviewed potential witnesses, explained appeal rights and consequences of losing those rights, and explained the nature of the charges. Note to the reviewing court, James Durham, counsel that was retained by Applicant's mother to represent Applicant, was never aware of the guilty plea proceeding with the court-

appointed counsel, James Clark, until several days after Applicant's release ( **See Exhibit 3** that is incorporated in the Art. 11.07 Application due to the inability to attach a copy). Counsel did not render effective assistance of counsel and in no way his conduct can be considered sound trial strategy.

Counsel merely filed an conclusionary affidavit with the Court telling them what the law required him to do, but it doesn't show proof that he rendered effective assistance. Applicant objected to his affidavit because it was not supported and Applicant's Application (Art. 11.07) alleged true facts and were proven to be true by potential witnesses affidavits and other legal documents discussed in the Application. The State supplied counsel's conclusionary affidavit in its answer which failed to respond to all of Applicant's allegations, merely filing an evasive, unsupported, conclusionary affidavit ( **See Exhibit C**). The Court of Criminal Appeals denied Applicant's Art. 11.07 Application unjustly, without written order and didn't consider not one of the three objection motions Applicant filed due to a mischaracterization of the facts alleged by the State. Applicant has caught the "catch 22," and no one will give him the opportunity to explain his case, where if done, justice will prevail.

( Cont'd from page 8 )

20. GROUND FIVE : <u>State Used Perjured Testimony From Undercover Agent Tom Coleman And Officer Kenny Albright To Unlawfully Revoke Applicant's Probation.</u>

During Applicant's revocation hearing on January 13, 2000, Tom Coleman testifies under oath and says that Applicant sold him cocaine during an alleged transaction that occurred on December 2, 1998, after being asked by the prosecutor whom did he purchase the dope from on that date (Reporter's Record Revocation Hearing, pg. 13, line 20-22 – incorporated herein and after as **R.R.R.H.**). This was an admission of perjured testimony from Tom Coleman used by the State to revoke Applicant's probation because

on August 11, 1999, Tom Coleman had previously alleged that Applicant's fiance, Laura Ann Mata, had sold him the same cocaine by actual hand to hand transfer on which she was sentenced to five years in TDCS-ID (See Exhibit D). Tom Coleman used a bag of cocaine at Laura Ann Mata's revocation hearing in Swisher County, Texas, unlawfully, to revoke her probation by saying she sold him the cocaine and made the transaction by hand to hand actual transfer to him (See Exhibit D). Then several months later at Applicant's revocation hearing on January 13, 2000, Tom Coleman lied and perjured himself, with no respect concerning the law, by testifying that Applicant sold him the cocaine by actual hand to hand transfer and the law of parties were not applied in the case when he knew that Laura Ann Mata sold him the cocaine by actual hand to hand transfer, on which she pled guilty to (See Exhibit D). Then after the prosecutor asked Tom Coleman to observe Applicant's hand Tom Coleman lied and said he observed Applicant's hand to be the hand of the twin brother, Applicant, whom made the actual hand to hand transfer with Laura Ann Mata being on the passenger side of the car on December 3, 1998, because he had a wart or callous type imperfection on his right index finger (R.R.R.H., pg. 13, line 2-23). Tom Coleman intentionally made the false observation in order to place Applicant at the scene of the alleged transaction to make it look like Applicant sold him the cocaine by actual hand to hand transfer, on which it misleaded the judge because Tom Coleman knew that Applicant did not have an imperfection on his right index finger as he falsely observes and testifies to (R.R.R.H., pg. 24, line 22 to pg. 25, line 6). In fact, Tom Coleman even testified under oath after reading his incident report that Applicant's twin brother, Mandis Barrow, is or was the twin brother whom had the imperfection on his right index finger and not Applicant as he falsely alleged (R.R.R.H., pg. 23, line 11-18). Therefore, Tom Coleman intentionally placed Applicant at the scene and direct involvement in the alleged transaction by falsely identifying Applicant before the trial judge as the twin whom had the imperfection on his right index finger in order to mislead the trial judge when he knew beyond a doubt that his incident report stated it was Applicant's twin brother whom had the imperfection on his right index

finger (R.R.R.H., pg. 29, line 11-18). Applicant's fingerprints were not found on the illegal narcotics and Tom Coleman testified under oath that he did not use any audio or visual-video surveillance (R.R.R.H., pg. 29, line 16 to pg. 30, line 15). This averment along with Laura Ann Mata's testimony or affidavit proves and verifies that the State used perjured testimony and fabricated evidence in order to unlawfully revoke Applicant's probation (See Exhibit D). Applicant was unlawfully revoked and sent to prison due to Tom Coleman's false allegations and misleading identification before the trial judge. Tom Coleman made up an falsified hilarious story that the reason why he did not get Applicant's fingerprints off the bag of illegal narcotics because the sweat off of his legs rubbed the prints off because he alleged he stored the drugs in his sock and drove approximately 60 miles before removing them to put it in a vault until trial, while also writing down information pertaining to the alleged transaction on his leg and stomach area, but it didn't smear or rub off as he alleged the prints did (R.R.R.H., pg. 28, line 10 to pg. 30, line 17). All of this goes to show that Applicant is telling the truth and deserves to be released because he didn't break any law. Tom Coleman's false observation of Applicant increased Applicant's guilt because it placed him to be the individual who committed the illegal drug transaction by hand to hand actual transfer.

Second, Tom Coleman falsely alleges <u>again</u> out of hatred and racism that on September 3, 1998, that Applicant sold him marijuana through the window of his truck by actual hand to hand transfer at a local Allsup's store in Swisher County (R.R.R.H., pg. 11, line 9-11; and pg. 22, line 22). Then during Applicant's twin brother's revocation hearing on May 10, 2000, Tom Coleman testifies <u>under oath</u> that Applicant's twin brother, Mandis Barrow, sold him the marijuana by actual hand to hand transfer. See Reporter's ~~Original~~ Record Revocation Hearing for Applicant's twin brother, Mandis Barrow, in Cause No. 32,056-D, on pg. 41, line 13-15. <u>Applicant would be more than glad to send the court a copy if needed!</u> Tom Coleman used perjured testimony and the State allowed him to in order to unlawfully revoke Applicant's and his twin brother's probation, but Applicant and his twin brother were totally innocent of Tom Coleman's

allegations and Tom Coleman and the State knew it. Applicant shouldn't of been violated upon falsified allegations bolstered by fabricated evidence because he was innocent and it could have been verified by an eyewitness who was with Tom Coleman during the alleged transaction and was an informant that the State failed to bring forth, along with Applicant's ineffective counsel ( R.R.R.H., pg 8, line 23-25). See Exhibit E. The State used perjured testimony and man-made fabricated evidence by Tom Coleman in order to have Applicant's probation unlawfully revoked. Elijah Kelly's presence at the Revocation Hearing would have revealed that the State was using perjured testimony and fabricated evidence to unlawfully revoke Applicant's probation (Exhibit E), on top of the fact, Tom Coleman failed to use any surveillance equiptment devices, audio or video, and failed to obtain any fingerprints from the bag of illegal narcotics in order to corroborate his allegations ( R.R.R.H., pg. 29, line 16 to pg. 30, line 15). Elijah Kelly, informant, was the only eyewitness to the drug transactions alleged by Tom Coleman, on which he was with Tom Coleman on 45% of the alleged deliveries during the 18 month investigation which led to a racially motivated drug sting known as the "Tulia Drug Sting," that occurred in the small town of Tulia in West Texas. This illegally motivated and carried out drug sting sparked up a number of Senate Bills to be passed commonly referred to as the "Tulia Proposals," due to Tom Coleman's allegations that were unsupported by any evidence at all. Two of the Senate Bills include 1584 and 1585. Applicant was unjustly violated and the State failed to address this ground of error in his 11.07 Application, and the Court of Criminal Appeals failed to review 3 of Applicant's Objections and merely denied the Application without written order when Applicant proved beyond all reasonable doubt he was unconstitutionally revoked and sent to prison for 20 years, the maximum punishment for the drug offenses. See Exhibit E.

Last, but not least, during Applicant's revocation hearing Officer Kenny Albright testified under oath that Applicant evaded from being detained which is false and will be proven herein and after. Officer Kenny Albright testified under oath that he made eye contact with Applicant during an alleged Evading Detention that supposedly occurred on June 30, 1999

page 29

(R.R.R.H., pg. 41, line 3-4). Officer Kenny Albright then testifies under oath that he lost the car but an Hispanic guy pointed in the direction the white car went (R.R.R.H., pg. 42, line 3-8). Then Officer Kenny Albright goes on to testify that he saw the white car again as it was turning back on Taylor Street (R.R.R.H., pg. 42, line 8-9). Again, Officer Kenny Albright testifies that he lost the car (white) he was in pursuit of. Well Applicant was pulled over by Officer Kenny Albright as he was leaving work from the Gutter's Pool Hall immediately after the officer activated his emergency lights on the 900 block of Taylor, a block away from where Applicant had just pulled off from work, and he was driving his Fiance's 1992 dark gray Mercury Cougar. This averment can be verified by Exhibit D, Amarillo Wrecker Service, whom towed the car away while the officer took Applicant to the county jail, and by the County Court at Law No. 2 in Cause No. 85591, of Potter County, Texas. Applicant was merely in the wrong place at the wrong time and Officer Kenny Albright was just looking for anyone to put the traffic violation on. Officer Kenny Albright knew Applicant wasn't the individual whom committed the Evading Detention in the white vehicle because Applicant had just left work not even a block away in a dark gray Mercury Cougar. The State intentionally and egregiously used Officer Kenny Albright's perjured testimony to unlawfully place and involve Applicant with the commission of an Evading Detention in order to secure an unlawful revocation of Applicant's probation, on which the State had the exculpatory evidence in its possession to exonerate Applicant but failed to disclose it. The State was just eager to obtain a conviction not taking Applicant's Constitutional Rights into consideration. Applicant did not commit the traffic violation as the record will clearly support this averment. Applicant alleged this ground of error and the State failed to address it in Applicant's Art. 11.07 Application, and then Applicant filed three Objection Motions but the Court of Criminal Appeals failed to review them on which it denied the Application without written order.

Applicant currently stands convicted due to Tom Coleman's and Officer Kenny Albright's perjured testimony and fabricated **evidence,**

upon which is supported by the facts Applicant states, the record, exhibits and the Reporter's Record Revocation Hearing for Applicant's twin brother, Mandis Barrow, in Cause No. 37,056-D of the 320th District Court of Potter County, Texas. Applicant's probation was unlawfully revoked and he ask the Federal Court to grant him the justice he deserves since the State failed to do so.

(Cont'd from page 8)

20. GROUND SIX: _There Was No Evidence To Obtain A Revocation Of Applicant's Probation._

To save the Court more reading Applicant ask the Court to really observe the facts of ground five because it ties into this ground of error and Applicant feels it would be unnecessary to go into the facts all over again because without Tom Coleman's perjured testimony and fabricated evidence and Officer Kenny Albright's perjured testimony there would be no evidence to substantiate a revocation of Applicant's probation. Therefore, this ground six is the result from ground five.

The undercover Tom Coleman alleged that Applicant sold him cocaine on December 2, 1998, by actual hand to hand transfer with an Hispanic female by the name of Laura Ann Mata being a passenger in the car when the transaction was to be had. Tom Coleman testified under oath to this fact, but withheld that prior to Applicant's revocation hearing he alleged that Laura Ann Mata sold him the cocaine on December 2, 1998, by actual hand to hand transfer in order to have her probation revoked. **See Exhibit D.** This explains why Applicant's fingerprints were not on the bag of cocaine and why Tom Coleman failed to use any surveillance equiptment, video or audio, because Applicant did not make any transaction to the untrustworthy undercover officer Tom Coleman, upon whom had to pay approximately $6,000.00 in restitution **after** being charged with theft or abuse of official capacity before he could return back to work which occurred in Cochran County. This transaction never

happened and the State failed to prove it happened. Nothing linked Applicant to the drug transaction (R.R.R.H., pg. 29, line 16 to pg. 30, line 15). Also see Exhibit D.

Second, Tom Coleman alleges that Applicant sold him marijuana by actual hand to hand transfer, but failed to use any surveillance equipment, audio or visual, and failed to obtain Applicant's finger prints off the bag of marijuana (R.R.R.H., pg. 29, line 16 to pg. 30, line 15), and he alleged he has been an officer for 14 years. Tom Coleman alleges that Applicant had a nickel size earring in his ear which he used as identification purposes (R.R.R.H., pg. 17, line 16-23), on which was proven that Applicant did not have a pierced ear (R.R.R.H., pg. 56, line 10 to pg. 57, line 5). But thus at Applicant's twin brother, Mandis Barrow's, revocation hearing Tom Coleman alleged it was Mandis Barrow whom delivered the marijuana by actual hand to hand transfer. See Reporter's Record Revocation Hearing for Applicant's twin brother, Mandis Barrow, in Cause No. 32,056-D, on pg. 41, line 13-15. Applicant would be more than glad to send the Court a copy if needed. This alone proves how Tom Coleman used perjured testimony and fabricated evidence to have Applicant's probation unlawfully revoked! Furthermore, the State withheld Elijah Kelly's testimony, informant and eye-witness to Tom Coleman's allegations (R.R.R.H., pg. 8, line 19 to pg. 9, line 1), because he would of revealed Applicant's innocence like he made known publicly. See Exhibit E. This goes back to explain why Applicant's prints were not on the bag of illegal drugs and why there wasn't any surveillance equipment used (R.R.R.H., pg. 29, line 16 to pg. 30, line 15). The only reason why Applicant was convicted was due to the national publicity which resulted in the Senate to pass Senate Bills 1584 and 1584, commonly known as the "Tulia Proposals," due to Tom Coleman's false allegations bolstered by fabricated evidence that resulted in approximately 43 unconstitutional arrests and convictions.

Last, but not least, Officer Kenny Albright mistakenly alleges that Applicant committed an Evading Detention when, in fact, Applicant did pull over when the officer first activated his emergency lights (R.R.R.H., pg. 42, line 11-16). Applicant was in the area because he was leaving work and officer Kenny Albright was looking for a white car whom

committed the traffic violation (R.R.R.H., pg. 42, line 3-8), and Officer Kenny Albright testified that he made _eye-contact_ with the driver whom committed the traffic violation (R.R.R.H. pg. 41, line 3-4), but Applicant was driving a _1992 dark gray Mercury Cougar_ and never evaded any detention because he was never detained, but pulled over immediately after Officer Kenny Albright activated his emergency lights (R.R.R.H., pg. 42, line 11-16). Applicant was not the individual driving the white car, but was merely at the wrong place at the wrong time driving his fiance's dark gray Mercury Cougar, which can be verified by the **Amarillo Recker Service**, whom towed the dark gray Mercury Cougar after Applicant was arrested, County Court at Law No. 2 in Cause No. 85591 of Potter County, Texas and Exhibit D. This proves Applicant was not the individual whom Officer Kenny Albright was in pursuit of in a **white car** when he made eye-contact with (R.R.R.H, pg. 41, line 3-4). There was No Evidence to obtain a revocation of Applicant's probation.

(Cont'd from page 8)

20. GROUND SEVEN: _Counsel Was Ineffective At Applicant's Revocation Hearing._

Applicant's counsel, C.J. McElroy, denied Applicant his Compulsory Process Rights to subpoena Elijah Kelly (informant to drug charges alleged by Tom Coleman and eyewitness), Laura Ann Mata (eyewitness to drug transaction alleged by Tom Coleman and owner of 1992 dark gray Mercury Cougar), Merlin Cooper (Applicant's employer whom was following Applicant at the time of Officer Kenny Albright's allegations of the Evading Detention) and Mandis Barrow (Applicant's twin brother and codefendant). Again, in order to save the Court alot of reading refer to ground five and six because they are all related and ground seven is the result. Counsel failed to interview and subpoena Laura Ann Mata, a witness that was crucial to Applicant's defense, that resulted in Applicant enduring a fundamentally unfair trial _(Exhibit D)_. Counsel failed to interview and subpoena Elijah Kelly, a witness who was crucial to Applicant's defense, that

resulted in Applicant enduring a fundamentally unfair trial. Counsel also failed to interview Mandis Barrow and Merlin Cooper, whom were crucial witnesses to rebut the State's allegations.

Counsel filed her unsupported, conclusionary affidavit in the State's Answer To Applicant's Art. 11.07 Application and stated that, "in preparing his defense I would have subpoenaed any witness Mr. Barrow wished to testify on his behalf or who would have been able to establish a defense to the allegation's alleged in the State's Motion." See Exhibit F. Applicant requested to counsel that he wanted her to interview Laura Ann Mata, Elijah Kelly, Merlin Cooper and Mandis Barrow because they were crucial eyewitnesses whom testimony was needed in order to establish a defense to the State's Motion, but counsel refused and failed to interview and subpoena these potential witnesses. See Exhibit D and E. Applicant has surely and clearly supplied, beyond a reasonable doubt, material evidence and testimony from witnesses whom he wanted to testify on which they were more than willing to be interviewed and subpoenaed to testify on Applicant's behalf at his revocation hearing, but counsel failed to interview and subpoena them after Applicant requested which proves that counsel's affidavit and the State's denial of Applicant's release was totally without merit. Counsel did not subpoena one, even one sole witness to testify on Applicant's behalf, but the State had seven witnesses to testify against Applicant upon which all could have been impeached if counsel would not of breached her legal duty and interviewed and subpoenaed Laura Mata, Elijah Kelly, Mandis Barrow, Merlin Cooper and Applicant's counsel for the Evading Detention, Van Williamson. See Exhibit D and E. Counsel breached her legal duty by failing to prepare for trial on which she did not properly investigate the case, subpoena or interview witnesses capable of testifying on Applicant's behalf or who would have been able to establish a defense to the allegations alleged in the State's Motion which caused Applicant egregious harm and a fundamentally, unfair, one-sided trial. Counsel did not interview or subpoena any witnesses, not a one, to testify on Applicant's behalf in order to establish a defense to the State's Motion, on which was crucial because there were eye-witnesses such as Laura Ann Mata, Elijah Kelly, Merlin Cooper and Mandis Barrow whom could and would have

corroborated Applicant's innocence or, at the least, establish a defense to the State's Motion. **See Exhibit D and E.**

The State's witness, Tom Coleman, used perjured testimony and fabricated evidence to have Applicant's probation revoked on which Laura Ann Mata, Elijah Kelly and Mandis Barrow could have testified to this contention, due to the fact, they were eye-witnesses to the alleged drug transactions, but counsel failed to interview and subpeona them which shows she was ineffective. **See Exhibit D and E.**

Counsel failed to investigate Applicant's case and its facts because the State's witness, Officer Kenny Albright, testified that Applicant committed an Evading Detention in a white vehicle. The record and the facts alleged in grounds five and six substantiate Applicant's innocence, on which he was driving a dark grey Mercury Cougar and the individual whom committed the Evading Detention was driving a white car whom Officer Kenny Albright made eye-contact with. Counsel failed to subpeona the Amarillo Recker Service pound reciept on which Applicant's dark grey Mercury Cougar was towed to after he was arrested falsely for the Evading Detention which would of or could of been used as impeach-eable evidence against the State's witness, Officer Kenny Albright. Counsel never interviewed or subpeonaed Merlin Cerper, Applicant's employer at time of Evaded Detention allegation who was following Applicant, whom could of revealed that Applicant had just left work less than a block of the alleged traffic violation and she was following him the entire way to verify he did not commit the traffic violation.

Applicant had a lawyer representing him on his Evading Detention by the name of Van Williamson who was in the process of filing a Motion to Dismiss based upon Officer Kenny Albright's false information and mistaken identity and counsel, C.J. McElroy, failed to interview him in order to obtain the necessary facts in order to impeach the State's witness, Officer Kenny Albright.

Counsel failed to investigate and interview the State's witness, Tom Coleman, to obtain his version of the facts and for impeachment purposes. During Applicant's twin brother's, Mandis Barrow, revocation hearing on May 10, 2000, his counsel, Walt Weaver, revealed incriminating evidence against

the State's witness, Tom Coleman, which led to the abandonment of one of the State's allegations in its Motion. Walt Weaver, Applicant's twin brother's, Mandis Barrow, attorney prepared hisself for trial and investigated Tom Coleman's background and found that his credibility was not so credible after all, but Applicant's counsel failed to interview and investigate Tom Coleman's background to gather valuable impeachment evidence to impeach Tom Coleman's testimony. After all, there was no evidence to link Applicant to the deliveries alleged by Tom Coleman but his sole word because he failed to use any surveillance equipment and failed to obtain Applicant's fingerprints on the bag of illegal narcotics. The State's witness, Tom Coleman, ended up having to leave duty because he was charged with abuse of official capacity. In other words, Tom Coleman was charged with theft which resulted in him paying $6,000.00 in restitution at the Sheriff's Department in Cochran County before he could return back to work undercover. The State's witness, Tom Coleman, could have been impeached and testimony discredited if counsel would have done her investigation into the facts and background of Tom Coleman and subpoenaed Laura Ann Mata, Elijah Kelly, Mandis Barrow like any reasonable effective attorney would have. See Exhibit D and E. Tom Coleman's theft charge and the facts pertaining to it can be verified by Applicant's twin brother's, Mandis Barrow, Reporter's Record Revocation Hearing in Cause No. 37,056-0 on page 50, line 15 to pg. 68, line 4. Applicant did not enjoy a fair trial due to counsel's deficient performance. Applicant's trial judge even was unaware of Tom Coleman's theft charges and leave of duty due to counsel's deficient performance. The trial judge believed on Tom Coleman's credibility and testimony that Applicant was involved in the illegal drug transactions, but if counsel would have subpoenaed and interviewed potential witness (See Exhibit D and E) and would have investigated Tom Coleman's background to reveal his theft charges the judge would have had a different opinion of the State's witness, Coleman and would have placed Applicant back on probation. Counsel's errors caused him egregious harm and he (Applicant) feels he would of been better off representing himself.

   Counsel's affidavit doesn't show she rendered effective assistance of counsel, but in the contrary, Applicant has showed beyond a preponderance

that he is entitled to relief. Counsel and the State failed to address the above-mentioned issues because they did not want to bring them up for review upon which the Court of Criminal Appeals failed to review Applicant's objections and other motions and denied the Application without written order. Applicant has stated facts supported by exhibits to the substantive value that prove Applicant is entitled to the relief he seeks.

*Exhibit A*

Complaint No.  15,166-C
Name:  LANDIS CHARLES BARROW

| Race | Sex | Age | DOB |
|------|-----|-----|-----|
| B | M | 18 | 06-26-78 |

Offense:  Agg Robbery
P. C.  § 29.03
Date of Offense:  November 24, 1996
Punishment Grade: First Degree Felony

Cause No. 37055-D

## INDICTMENT

In the name and by the Authority of the State of Texas:

THE GRAND JURORS for the County of Potter, State aforesaid, duly organized and sworn as such at the JULY  Term  A.D.,  1996 of the District Court of the 251st Judicial District, in and for said County and State, upon their oaths in said Court, present that LANDIS CHARLES BARROW,  hereinafter called defendant, on or about the 24th day of November, 1996 and anterior to the presentment of this indictment, in the County of Potter and State of Texas, did then and there, while in the course of committing theft of property, to-wit: good and lawful U.S. Currency, and with intent to obtain and maintain control of said property, intentionally and knowingly threaten and place VICTOR GUY SMITH in fear of imminent bodily injury and death, and the defendant did then and there use and exhibit a deadly weapon, to-wit:  a .177 caliber  BB Pistol in the shape of a semiautomatic weapon that in the manner of its use and intended use was capable of causing death and serious bodily injury.

**Against the peace and dignity of the State.**

*Lindsey Davidson*

Foreman of the Grand Jury

I, Caroline Woodburn, Clerk of the District Courts and County Courts at Law, in and for Potter County, Texas, do hereby certify that the foregoing instrument is a correct copy of the original on file in this office

ATTESTED this 10 day of _____ 20 01

By_____ Deputy

— *Exhibit A* —

*Exhibit B*

| | |
|---|---|
| Complaint No. 15,165-C | Offense: Agg Robbery |
| Name: MANDIS CHARLES BARROW | P. C. § 29.03 |
| Race  Sex  Age  DOB | Date of Offense: November 24, 1996 |
| B  M  18  06-26-78 | Punishment Grade: First Degree Felony |

Cause No. 37056 D

### INDICTMENT

**In the name and by the Authority of the State of Texas:**

.THE GRAND JURORS for the County of Potter, State aforesaid, duly organized and sworn as such at the JULY  Term  A.D.,  1996 of the District Court of the 251st Judicial District, in and for said County and State, upon their oaths in said Court, present that MANDIS CHARLES BARROW,  hereinafter called defendant, on or about the 24th day of November, 1996 and anterior to the presentment of this indictment, in the County of Potter and State of Texas, did then and there, while in the course of committing theft of property, to-wit: good and lawful U.S. Currency, and with intent to obtain and maintain control of said property, intentionally and knowingly threaten and place VICTOR GUY SMITH in fear of imminent bodily injury and death, and the defendant did then and there use and exhibit a deadly weapon, to-wit:  a .177 caliber  BB Pistol in the shape of a semiautomatic weapon that in the manner of its use and intended use was capable of causing death and serious bodily injury.

**Against the peace and dignity of the State.**

_Lindsey Davidson_
Foreman of the Grand Jury

*Exhibit C*

NO. W-37,055-01-D

| | | |
|---|---|---|
| EX PARTE | § | IN THE 320th DISTRICT COURT |
| | § | |
| | § | IN AND FOR |
| | § | |
| CHARLES LANDIS BARROW | § | POTTER COUNTY, TEXAS |

## AFFIDAVIT

COUNTY OF POTTER

STATE OF TEXAS

Before me the undersigned authority, on this day personally appeared JAMES CLARK, who swore on oath as follows:

"My name is James Clark and I am licensed to practice law in the State of Texas. I was appointed to represent Charles Landis Barrow who had been indicted in Cause No. 37,055-D in the 320th District Court of Potter County, Texas for the offense of Aggravated Robbery.

Mr. Barrow accepted the State's plea bargain offer of ten years deferred adjudication community supervision plus a fine of $2000.00 and on September 11, 1997 entered a plea of guilty to the allegations contained in the indictment. The trial court accepted the plea bargain agreement and placed Mr. Barrow on community supervision for a period of ten years and assessed a fine of $2,000.00. It is my understanding that Mr. Barrow's community supervision was subsequently revoked in January of 2000 and he was sentenced to imprisonment in the institutional division of the Texas Department of Criminal Justice. I did not represent Mr. Barrow at the time the State moved to revoke his community supervision.

In his application for writ of habeas corpus, Mr. Barrow alleges that I rendered ineffective assistance of counsel on the following grounds:

1. Alleged failure to properly investigate the allegations in the indictment.
2. Alleged failure to insure that Applicant was not unduly influenced to involuntarily

*— Exhibit C —*

enter a plea of guilty.

During my representation of Mr. Barrow, I had meetings with him and reviewed the District Attorney's file in his case on several occasions. I was allowed to have complete access to the District Attorney's file in Cause No. 37,055-D pursuant to its "open file" policy. I reviewed all the police incident reports, witness statements  and any other documents contained in the District Attorney's file.

I never induced Mr. Barrow to enter a plea of guilty against his wishes to the allegations in the indictment. Mr. Barrow  knowingly and voluntarily entered his plea of guilty only after I counseled him concerning his rights including his right to a jury trial and after he told me he wished to accept the State's plea bargain offer.

Mr. Barrow's contention that I rendered ineffective assistance of counsel is totally without merit.

SIGNED this 20th day of August, 2001.

James Clark
Attorney at Law
1800 S. Washington St., Suite 105
Amarillo, Texas
(806) 373-5694
SBN 04285500

SUBSCRIBED AND SWORN TO before me on this 20th day of August, 2001.

NOTARY PUBLIC, STATE OF TEXAS

JACALYN DEWEES
Notary Public, State of Texas
My Commission Expires
04-03-2004

*Exhibit D*

IN THE 320TH JUDICIAL DISTRICT COURT
IN AND FOR
POTTER COUNTY, AMARILLO, TEXAS

EX PARTE

NO:W-37,055-01-D

LANDIS CHARLES BARROW

AFFIDAVIT BY LAURA ANN MATA

FOLLOWING:

I, LAURA ANN MATA, CURRENTLY RESIDE AT TDCJ-ID, GATESVILLE- TRUSTY CAMP UNIT, 1401 STATE SCHOOL ROAD, CORYELL COUNTY, TEXAS 76599. MY TDC NUMBER IS 887685 AND MY SOCIAL SECURITY NUMBER IS 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.

ON JUNE 18TH I WAS ARRESTED ON A VIOLATION OF MY PROBATION. I WAS VIOLATED DUE TO TOM COLEMAN'S ALLEGATIONS THAT I SOLD HIM COCAINE ON DECEMBER 2, 1998. TOM COLEMAN ALLEGED THAT LANDIS CHARLES BARROW WAS A PASSENGER IN THE VEHICLE I WAS APPARENTLY IN. TOM COLEMAN STATED THAT I HANDED HIM THE COCAINE BY HAND TO HAND ACTUAL TRANSFER. ON AUGUST 11, 1999, I SUBSEQUENTLY OR UNFORTUNATELY PLED GUILTY TO TOM COLEMAN'S ALLEGATIONS TO RECEIVE 5 YEARS TDC IN ORDER TO PREVENT A STIFFER PUNISHMENT. TOM COLEMAN ALTERED HIS TESTIMONY AT LANDIS CHARLES BARROW'S HEARING ON JANUARY 13, 2000 WHERE HE COMMITTED PERJURY BY ALLEGEING AND TESTIFYING THAT LANDIS CHARLES BARRROW SOLD HIM, TOM COLEMAN, THE COCAINE BY ACTUAL HAND TO HAND TRANSFER. HE THUS HAD LANDIS CHARLES BARROW'S PROBATION REVOKED BY STATING THAT LANDIS CHARLES BARROW SOLD HIM THE COCAINE, BUT HAD MY PROBATION REVOKED BY ALLEGING I SOLD HIM THE COCAINE THEREFORE HE USED THE SAME TRANSACTION BUT CHANGED THE STORY AT EACH OF OUR HEARINGS.

DURING C.J. McELROY'S REPRESENTATION OF LANDIS CHARLES BARROW, SHE NEVER ONCE INTERVIEWED ME TO DETERMINE WHAT ROLE LANDIS CHARLES BARROW PLAYED IN THE TRANSACTION ALLEGED BY TOM COLEMAN ON DECEMBER 2, 1999. C.J. McELROY NEVER ONCE SUBPOENAED ME AND I WAS THE ONLY EYE-WITNESS TO THE ALLEGED TRANSACTION. IF C.J. McELROY WOULD HAVE SUBPOENAED ME TO TESTIFY AT LANDIS CHARLES BARROW'S REVOCATION HEARING ON JANUARY 13, 2000, I COULD HAVE PRESENTED VALUABLE MATERIAL TESTIMONY TO PROVE THAT LANDIS CHARLES BARROW WAS NOT INVOLVED IN THE TRANSACTION ALLEGED BY TOM COLEMAN. AT LANDIS CHARLES BARROW'S REVOCATION HEARING IT WAS FURTHER PROVEN THAT HIS FINGERPRINTS WERE NOT ON THE BAG OF COCAINE AND IT WAS FURTHER SHOWN AND PROVEN THAT HE WAS NOT WEARING GLOVES TO PREVENT FINGERPRINTS. AGAIN AT MY HEARING TOM COLEMAN ALLEGED I SOLD HIM THE COCAINE BY ACTUAL HAND TO HAND TRANSFER THEN ALTERED HIS ALLEGATIONS ABOUT THE DECEMBER 2, 1998, TRANSACTION IN ORDER TO REVOKE LANDIS CHARLES BARROW'S PROBATION BY PERJURYING HIMSELF BY SAYING THAT LANDIS CHARLES BAROW WAS THE INDIVIDUAL WHO SOLD HIM THE COCAINE BY ACTUAL HAND TO HAND TRANSFER. THIS EXPLAINS WHY LANDIS CHARLES BARROW'S FINGERPRINTS WERE NOT ON THE BAG OF ILLEGAL NARCOTICS BECAUSE TOM COLEMAN HAD ALREADY USED THEM AS EVIDENCE TO CONVICT ME ON AUGUST 11, 1999, SO HE ALTERED THE EVIDENCE AND TESTIMONY IN ORDER TO USE THEM AGAINST LANDIS CHARLES BARROW AT HIS REVOCATION HEARING TO REVOKE HIS PROBATION. I COULD OF PRESENTED VALUABLE MATERIAL TESTIMONY

*— Exhibit D —*

ON BEHALF OF LANDIS CHARLES BARROW ON WHICH COULD OF BEEN USED TO IMPEACH THE STATE'S SOLE WITNESS, TOM COLEMAN, BECAUSE I WAS THE ONLY EYEWITNESS TO THE DECEMBER 2, 1998 TRANSACTION, BUT C.J. McELROY NEVER BOTHERED TO INTERVIEW OR SUBPOENA ME WHICH LED TO THE REVOCATION OF LANDIS CHARLES BARROW'S PROBATION.

FURTHERMORE, IF C.J. McELROY WOULD HAVE SUBPOENAED AND INTERVIEWED ME I COULD OF PRESENTED VALUABLE MATERIAL TESTIMONY TO IMPEACH THE STATE'S WITNESS, OFFICER KENNY ALBRIGHT, ON WHICH HE ALLEGED THE CAR THAT COMMITTED THE EVADING DETENTION WAS A WHITE CAR. THIS WAS A FALSE RECITATION OF THE FACTS BECAUSE I OWNED THE 1992 DARK GREY COUGAR LANDIS CHARLES BARROW WAS DRIVING FROM WORK AT THE GUTTER POOL HALL THAT WAS UNFORTUNATELY TOWED AWAY. OFFICER ALBRIGHT TESTIFIED UNDER OATH AT LANDIS CHARLES BARROW'S REVOCATION HEARING THAT HE MADE EYE-CONTACT WITH THE DRIVER WHO COMMITTED THE EVADING DETENTION AND THAT THE PERPETRATOR WAS DRIVING A WHITE CAR. AGAIN, LANDIS CHARLES BARROW WAS ARRESTED LEAVING WORK IN MY 1992 DARK GREY COUGAR, WHICH IS NOT WHITE LIKE THE CAR OFFICER ALBRIGHT WAS LOOKING FOR AFTER HE LOST VISUAL CONTACT OF THE PERPETRATOR AS ALLEGED BY HIS TESTIMONY AT LANDIS CHARLES BARROW'S REVOCATION HEARING. LANDIS CHARLES BARROW WAS NOT THE INDIVIDUAL OFFICER KENNY ALBRIGHT WAS LOOKING FOR BECAUSE HE WAS DRIVING MY DARK GREY 1992 COUGAR AND NOT A WHITE VEHICLE LIKE THE PERPETRATOR WAS DRIVING. THIS FALSE TESTIMONY LED TO LANDIS CHARLES BARROW'S PROBATION TO BE REVOKED AND SENTENCE OF 20 YEARS, ON WHICH WOULD OF NEVER HAPPENED IF C.J. McELROY WOULD HAVE DONE HER LEGAL DUTY TO INTERVIEW AND SUBPOENA ME TO TESTIFY AT THE REVOCATION HEARING. ALSO C.J. McELROY FAILED TO INTERVIEW AND SUBPOENA LANDIS CHARLES BARROW'S EMPLOYER, MERLIN COOPER, WHO WAS FOLLOWING MR. BARROW AFTER LEAVING WORK WHO WITNESSED HIS FALSE ARREST BY OFFICER KENNY ALBRIGHT. MERLIN COOPER COULD HAVE ALSO GIVEN VALUABLE MATERIAL TESTIMONY TO CORROBORATE LANDIS CHARLES BARROW'S INNOCENCE AND TO FURTHER, IMPEACH THE STATE'S WITNESS, OFFICER KENNY ALBRIGHT, THAT MR. BARROW WAS DRIVING A DARK GREY COUGAR AND NOT WHITE.

I FURTHER STATE THAT LANDIS CHARLES BARROW DID NOT HAVE A FAIR TRIAL BECAUSE OF HIS COUNSELS C.J. McELROY, DEFICIENT PERFORMANCE BY FAILING TO INTERVIEW MYSELF, ALONG WITH MERLIN COOPER, ELIJAH KELLY, AND MANDIS CHARLES BARROW, WHOM COULD OF CORROBORATED LANDIS CHARLES BARROW'S INNOCENCE AND, AT THE LEAST, A DEFENSE TO THE STATE'S ALLEGATIONS. IF C.J. McELROY WOULD HAVE SUBPOENAED OR, AT THE LEAST, INTERVIEWED THE ABOVE MENTIONED WITNESSES, LANDIS CHARLES BARROW'S PROBATION WOULD HAVE NOT BEEN REVOKED AND HE WOULD NOT BE INCARCERATED TODAY. C.J. McELROY BREACHED HER LEGAL DUTY AND IT DIRECTLY AFFECTED THE OUTCOME OF LANDIS CHARLES BARROW'S REVOCATION HEARING, ON WHICH SHE SHOULD BE HELD ACCOUNTABLE FOR HER DEFICIENT PERFORMANCE.

PURSUANT TO TITLE  28.U.S.C. § 1746 AND TITLE 6 OF THE TEXAS CIVIL PRACTICES AND REMEDIES CODE, CHAPTER 132, THE BELOW DECLARATION, BEING UNSWORN, IS CODIFIED UNDER LAW.

I, LAURA ANN MATA, BEING PRESENTLY INCARCERATED IN GATESVILLE-TRUSTY CAMP UNIT, IN CORYELL COUNTY, TEXAS, DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON THIS 12TH DAY OF OCTOBER, 2001.

*Laura A. Mata*

LAURA ANN MATA #887685

Friday, October 12, 2001 6:55 PM

2

# Exhibit E

On or approximately on September 3rd of 1998. I Eliga Kelly also known as "Mac Kelly" pulled up to Allsups or on Second street. I can remember the day because a friend by the name of Cookie was having a party across the street from the store at her house under the tree in the front yard. Well as me and T.J. pulled up to the store we approached the Twins in the parking lot in a grey Cadillac Mardis was driving the car and Mardis got out to talk to me. Mardis had his jaw wired shut because he had get into a fight with Marcus Hicks Mardis asked me was why was I still riding around with that police. They told me several times that he was the police but I was drunk and really didn't pay any attention to them. At that time T.J. asked me were those the twins? I told him yes and he asked Mardis where could he get some smoke? Mardis told him that he didn't sell dope

## — Exhibit E —

2

and he didn't know where to get
any and furthermore don't ever
approach him about any dope. The
Twins drove off very mad and went
to Cookie's party that she was having
in her yard. I was in the truck
with Tom Coleman all that day until
he dropped me off at home. We
rode around all that day looking
for some smoke but couldn't get
any. I was with T.J. the whole
time while we were at the store
and the twins never sold him
anything. I know this because I
saw and witnessed the whole
conversation. I have known the
twins ever since they were babies
and Mardis is real outgoing and
has never had an ear pierced
since I've known him. Mardis
has had his ear pierced for
quite some time now. To tell you
the truth that is the only way
that I can tell them apart if
they are side by side.

3

I Eliza Kelly dictated the
above said document on June 10, 2000
and sign it under the penalty of
perjury that the above said information
is true and correct to the best of
my knowledge.

Eliza Kelly        Jean B Berry
signature          ,    witness

600 SE 2ND Tulia, Texas 79088
address

RICHARD WALKER
NOTARY PUBLIC,
STATE OF TEXAS
MY COMMISSION EXPIRES 10-19-2000

Richard Walker
6/12/00

*Exhibit F*

NO. W-37,055-01-D

| | | |
|---|---|---|
| · EX PARTE | §<br>§<br>§<br>§<br>§ | IN THE 320th DISTRICT COURT<br><br>IN AND FOR |
| CHARLES LANDIS BARROW | | POTTER COUNTY, TEXAS |

<u>AFFIDAVIT</u>

COUNTY OF POTTER

STATE OF TEXAS

Before me the undersigned authority, on this day personally appeared C. J. McELROY, who swore on oath as follows:

"My name is C.J. McElroy and I am licensed to practice law in the State of Texas. I was appointed to represent Charles Landis Barrow on the State's *Motion to Proceed With Adjudication Of Guilt on Original Charge* in Cause No. 37,055-D in the 320th District Court of Potter County, Texas.

In his application for writ of habeas corpus, Mr. Barrow alleges that I rendered ineffective assistance of counsel because I failed to properly investigate and interview defense witnesses in preparation for the hearing on the State's *Motion to Proceed With Adjudication Of Guilt on Original Charge.*

At the hearing on the State's *Motion to Proceed With Adjudication Of Guilt on Original Charge,* Mr. Barrow entered a plea of not true. In preparing his defense I would have subpoenaed any witness Mr. Barrow wished to testify on his behalf or who would have been able to establish a defense to the allegations alleged in the State's *Motion.* His contention that I failed to investigate the allegations in the State's *Motion to Proceed With*

*— Exhibit F—*

*Adjudication Of Guilt on Original Charge* or that I failed to interview or subpoena any

material defense witnesses is without merit .

SIGNED this _29th_ day of August, 2001.

C.J. McElroy
SBN 13581995
2505 Lakeview Drive, Suite 301
Amarillo, Texas 79106
806/356-0555

SUBSCRIBED AND SWORN TO before me on this _29th_ day of August, 2001.

NOTARY PUBLIC, STATE OF TEXAS

LINDA ROWELL
NOTARY PUBLIC,
STATE OF TEXAS
My Commission Expires 7-20-2002